UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

JOSE DE JESUS CARMONA-NAVA,

           Defendant/Petitioner,

    v.

UNITED STATES OF AMERICA,

           Plaintiff/Respondent.

No. CR 04-157-01-MO
No. CV 06-798-MO

OPINION & ORDER

MOSMAN, J.,

    Petitioner Jose De Jesus Carmona-Nava, appearing *pro se*, moves to correct his sentence (CV #1/CR # 50) pursuant to 28 U.S.C. § 2255. Petitioner generally asserts two claims for relief. First, he argues he received ineffective assistance of counsel because his attorney failed to provide the court with mitigating evidence that would have resulted in a lower sentence. Second, he claims his Fifth Amendment right to remain silent was violated at sentencing. For the reasons set forth below, I DENY the petition. Because the record shows petitioner is not entitled to relief, his request for an evidentiary hearing is also DENIED.

PAGE 1 - OPINION AND ORDER

I.   PROCEDURAL AND FACTUAL SUMMARY

On March 2, 2004, police executed a search warrant at a residence where petitioner was living. They seized 263 grams of pure methamphetamine, approximately 75 grams of cocaine, and almost 200 grams of marijuana. Among other things, they also seized a loaded handgun with extra ammunition. Petitioner was carrying $1,478 in cash when police arrested him. Subsequent investigation indicated petitioner may have been looking after his cousin's drug business while his cousin was traveling in Mexico.

From the time he made his first appearance in federal court on April 19, 2004, until he pleaded guilty on March 29, 2005, petitioner was represented by four different appointed counsel. Petitioner first appeared in court represented by Assistant Federal Defender Steven Jacobson. A week later, Assistant Federal Defender Susan Russell assumed representation. While representing petitioner, Ms. Russell received a letter on July 2, 2004 from Parke Eldred, an investigator for the Federal Public Defender, which stated: "[T]hese guys, including old Jean, all share the opinion that [petitioner] was a nice guy, and is innocent of these current charges." Pet. Mem. at 2. Ms. Russell was replaced on July 20, 2004 by attorney Whitney Boise, who represented petitioner until January 25, 2005, when defense counsel Oscar Garcia took over. The record does not reflect the identity of the people referenced in the letter received by Ms. Russell, or what action Ms. Russell, Mr. Boise, or Mr. Garcia took in response to it. It is clear that at some juncture, petitioner became aware of the letter because he relies heavily on it in the petition now before the court.

Pursuant to the terms of a plea agreement, petitioner pleaded guilty to a single count indictment charging him with possession with intent to distribute more than 50 grams of

PAGE 2 - OPINION AND ORDER

methamphetamine, in violation of 21 U.S.C. § 841(a)(1). As part of his plea agreement, petitioner waived his right to appeal or collaterally attack his conviction or sentence under 28 U.S.C. § 2255, except for claims of ineffective assistance of counsel, newly discovered evidence, or a retroactive change in the applicable guidelines or statute. He also admitted, as part of his plea agreement, to relevant conduct that included more than 50 grams of actual methamphetamine, resulting in a United States Sentencing Guidelines ("U.S.S.G.") Base Offense Level of 32, prior to adjustments. In turn, the government agreed to recommend a three-level downward departure for petitioner's acceptance of responsibility, a two-level reduction if petitioner qualified for the "safety valve," and a sentence at the low end of the applicable guideline range.

The pre-sentence report ("PSR") found petitioner responsible for possession and distribution of the entire 236 grams of methamphetamine recovered, which resulted in a Base Offense Level of 34. The PSR also recommended a two-level upward adjustment for possession of a firearm, denial of safety valve benefits, and a low-end sentence of 135 months imprisonment.[1] Before sentencing, Mr. Garcia submitted an 11-page letter with attachments outlining mitigating circumstances for the court to consider in sentencing. Answer at 3. The letter did not request a specific sentencing range because petitioner apparently directed Mr. Garcia to ask the court to give him a sentence that was "just and proper." Garcia Aff. at 2.

On August 8, 2005, this court sentenced petitioner to seventy months imprisonment and five years of supervised release. The court declined to hold petitioner responsible for the

---

[1] In the absence of safety-valve benefits, petitioner would be subject to a statutorily imposed 10-year minimum term of imprisonment.

PAGE 3 - OPINION AND ORDER

possession of a firearm, granted petitioner the benefit of the safety valve provision, and limited petitioner's relevant conduct to 50 grams, rather than 236 actual grams of actual methamphetamine. As a result of the plea negotiations between his attorneys and the government, petitioner received a sentence approximately one-half as long as that suggested in the PSR. Nonetheless, on June 1, 2006, petitioner, appearing *pro se*, filed a motion to correct his sentence (CV #1/CR #50) pursuant to 28 U.S.C. § 2255.

II.  DISCUSSION

Petitioner asserts he is entitled to relief under 28 U.S.C. § 2255 because he received ineffective assistance of counsel and because he claims his sentence was obtained in violation of the Fifth Amendment. He argues he received ineffective assistance because his attorney, Mr. Garcia, failed to investigate and present certain mitigating evidence, and that but for his counsel's deficient representation, he would have received a lower sentence. He also claims the sentence imposed violates his Fifth Amendment right to remain silent, but he asserts no facts to support this claim. Only jurisdictional claims, constitutional claims, and claims of error so fundamental as to have resulted in a complete miscarriage of justice warrant relief on collateral attack. 28 U.S.C. § 2255; *United States v. Addonizio*, 442 U.S. 178, 185 (1979).

**A. Ineffective Assistance of Counsel**

The Sixth Amendment guarantees the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on an ineffective assistance of counsel claim, a petitioner must prove (1) counsel's performance fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced petitioner to the extent that it resulted in an unreliable or fundamentally unfair outcome in the proceedings. *Id.* at 687-88. The

court need not address both prongs of the *Strickland* inquiry if the petitioner fails to prove one component. *Id.* at 687. Thus, when a petitioner fails to make a sufficient showing that counsel's conduct was objectively unreasonable, the court need not address whether counsel's conduct prejudiced petitioner.

Because there are "countless ways to provide effective assistance in any given case," a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The court must evaluate counsel's conduct in light of the facts of the particular case at the time, without the benefit of hindsight. *Id.* at 690. The *Strickland* analysis also applies to ineffective assistance claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

### 1. Failure to Investigate

First, petitioner claims Mr. Garcia failed to sufficiently investigate a letter written by an investigator for the Federal Public Defender to Assistant Federal Defender Susan Russell, in which the investigator stated that several people thought petitioner was innocent of the charges. Thus, petitioner's claim is based on Mr. Garcia's decision to limit the scope of his investigation into potential mitigating evidence.

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). In deciding whether counsel's decision not to investigate was reasonable, the court must consider all the circumstances and apply a "heavy measure of deference to counsel's judgments." *Id.* at 521-22.

Mr. Garcia's decision not to investigate further into the investigator's letter did not fall below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88. Here, weighty evidence contradicts the vague letter from the investigator for the Federal Public Defender. Although the letter could be read to mean that the individuals it references believed petitioner was innocent of all the charges against him, it also could be read to mean that they believed petitioner was not guilty of all the charges against him, or in other words, that they believed he was only guilty of some of them–guilty, for example, of some distribution but not the entire conspiracy. The weight of the direct evidence runs counter to the first interpretation. The fact that petitioner was found in the house when the search warrant was executed is inescapable. Furthermore, he had $1,478 cash on him when he was arrested. Under these circumstances, it was reasonable for Mr. Garcia to refrain from investigating a letter that so plainly contradicted the direct evidence.

In addition, Mr. Garcia's failure to investigate further was reasonable given that the petitioner himself contradicted the letter when he specifically instructed Mr. Garcia not to investigate information demonstrating that petitioner had a minor role in the offense. Garcia Aff. at 2. It is not unreasonable for an attorney to favor a client's own statements over a vague letter such as the one here.

Finally, Mr. Garcia's decision not to investigate the letter is further buttressed by the fact that both Ms. Russell and Mr. Boise also decided to refrain from doing so based on the same facts. Before Mr. Garcia assumed representation, Ms. Russell and Mr. Boise represented petitioner for three and six months respectively. Mr. Garcia received copies of both Ms. Russell's and Mr. Boise's files, which included investigation and mitigation materials, when

PAGE 6 - OPINION AND ORDER

he took over petitioner's case and carried Mr. Boise's plea negotiations to completion. Affording Mr. Garcia a heavy measure of deference in his determination that no further investigation was required, I find his decision within an objective standard of reasonableness given the weight of the evidence, petitioner's own statements to him, and the fact that two other attorneys reviewed petitioner's case and came to the same conclusion. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 690-91).

Even assuming *arguendo*, that Mr. Garcia's failure to further investigate the letter was unreasonable under the circumstances, petitioner is still not entitled to relief unless he can show Mr. Garcia's ineffective performance prejudiced petitioner. *Hill*, 474 U.S. at 59. A petitioner claiming ineffective assistance during the plea process must show a reasonable probability that, but for counsel's errors, petitioner would not have pleaded guilty and would have insisted on going to trial. *Id*.

Here, no evidence suggests petitioner would have refrained from pleading guilty and insisted on going to trial if Mr. Garcia had investigated the letter. The facts indicate petitioner knew about the letter before sentencing and forbade his attorney from further investigating it. Garcia Aff. at 2. Thus, petitioner knew about the letter and insisted on pleading guilty anyway. Additionally, the deal he obtained as a result of his attorneys' hard work may in fact be consistent with the information provided by the letter. Through the collective efforts of his attorneys, including Mr. Garcia, petitioner received a sentence roughly half as long as that suggested in the PSR. As the letter may support a finding that petitioner played a marginal role, the plea

agreement negotiated by his attorneys is ultimately consistent with the letter. Considering petitioner admitted wrongdoing and received a very favorable plea agreement, I find Mr. Garcia's failure to investigate further did not prejudice petitioner to the extent that it resulted in a fundamentally unfair outcome in the proceedings.

### 2. Failure to Advise the Court of Three Grounds for Departure

#### a. *Aberrant Behavior*

Petitioner also alleges he received ineffective assistance of counsel because Mr. Garcia failed to request a downward departure based on petitioner's aberrant behavior. Section 5K2.20 of the Sentencing Guidelines provides that a court may depart downward under certain circumstances indicating the defendant's criminal conduct was a marked deviation from an otherwise law-abiding life. U.S.S.G. § 5K2.20(b). However, the court cannot depart downward based on aberrant behavior in cases where the crime of conviction is a serious drug trafficking offense. U.S.S.G. § 5K2.20(c)(3). The Guidelines define a "serious drug trafficking offense" as "any controlled substance offense under title 21, United States Code, other than simple possession under 21 U.S.C. § 844, that provides for a mandatory minimum term of imprisonment of five years or greater . . . ." U.S.S.G. § 5K2.20 cmt. n.1.

Petitioner pleaded guilty to possession with intent to distribute more than 50 grams of pure methamphetamine. This constitutes a serious drug trafficking offense under U.S.S.G. § 5K2.20. Thus, petitioner was not entitled to a downward departure based on aberrant behavior. Accordingly, Mr. Garcia's representation did not fall below an objective standard of reasonableness when he did not present an unavailable and inappropriate mitigating argument to the court. Therefore, this claim for ineffective assistance fails.

### b. *Status as a Deportable Alien*

Petitioner next alleges Mr. Garcia was ineffective because he failed to request a downward departure based on petitioner's status as a deportable alien. The sentencing court has the authority to depart downward if the court finds a mitigating circumstance exists that was "not adequately taken into consideration by the Sentencing Committee in formulating the guidelines." 18 U.S.C. § 3553(b) (rendered advisory by *United States v. Booker*, 543 U.S. 220 (2005)). Section 3553(b) permits departure from the designated sentencing range for those circumstances falling outside the "heartland" of circumstances in typical cases. *Koon v. United States*, 518 U.S. 81, 92-94 (1996). Departures based on grounds not mentioned in the U.S.S.G. will be "'highly infrequent.'" *United States v. Charry Cubillos*, 91 F.3d 1342, 1345 (9th Cir. 1996) (citing *Koon*, 518 U.S. at 96). The possibility of deportation is not an appropriate ground for downward departure because it does not render a defendant's crime any less serious. *United States v. Alvarez-Cardenas*, 902 F.2d 734, 737 (9th Cir. 1990).

The court was aware at sentencing of petitioner's status as a deportable alien. Plea Hr'g Tr. at 12-13. The facts of this case did not fall outside the heartland of typical cases of its type, which is to say that no unusual mitigating circumstances existed to justify departure. The court found it appropriate to afford petitioner adjustments based on acceptance of responsibility and the safety valve provision. Moreover, on a close factual call, this court also declined to hold petitioner responsible for the firearm enhancement. The court was unwilling to depart any further based on the facts of the case. Even if Mr. Garcia had argued that the court should depart downward because of petitioner's status as a deportable alien, it would not have been appropriate

to do so. Because Mr. Garcia's failure to seek a downward departure on these grounds did not prejudice petitioner, this claim also fails.[2]

To the extent petitioner may be asserting an equal protection claim because he will spend the last 10% of his sentence in a deportation facility rather than in minimum security confinement as allowed by 18 U.S.C. § 3624(c), that claim is denied. Pet. Mem. at 6. Petitioner argues that due to factors "unrelated to Moral Worthiness," he will be confined to a higher security facility and subjected to more severe punishment than an American citizen under similar circumstances. *Id.* at 6. "Because 'prisoners with detainers' does not constitute a suspect class, the detainer exclusion is valid so long as it survives the rational basis test, which accords a strong presumption of validity." *McLean v. Crabtree*, 173 F.3d 1176, 1186 (9th Cir. 1999) (citing *Heller v. Doe*, 509 U.S. 312, 319 (1993)). A government policy will survive the rational basis test as long as it is rationally related to a legitimate government interest. *McLean*, 173 F.3d at 1186 (citing *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). The purpose of 18 U.S.C. § 3624(c) is to prepare prisoners for re-entry into their communities. 18 U.S.C. § 3624(c). Here, a significant flight risk and inevitable deportation obviate the need to re-integrate aliens into American communities. These interests and Congress's plenary power over alien affairs justify the differential treatment imposed on aliens because they are rationally related to the government's policy regarding illegal aliens. *See Lizarraga-Lopez v. United States*, 89 F. Supp. 2d 1166, 1169

---

[2]Petitioner suggests the Attorney General may have issued a memo to all federal prosecutors 10 years ago instructing them to recommend a 1-2 level departure in exchange for a concession of deportability. Pet. Mem. at 6. That memo is not controlling here. No evidence suggests petitioner made such a concession. Subsequent case law indicates it is within the court's discretion not to depart downward based on an individual's status as a deportable alien. *United States v. Davoudi*, 172 F.3d 1130, 1133-34 (9th Cir. 1999).

PAGE 10 - OPINION AND ORDER

(S.D. Cal. 2000). Because petitioner's equal protection rights have not been violated, a departure is not warranted here.

### c. Fast Track Program

Petitioner also contends Mr. Garcia was ineffective because he "failed to seek a downward departure for fast track under U.S.S.G. 5K2.0." Pet. Memo. at 7. Section 5K2.0 does not cover departures based on a defendant's agreement to participate in an early disposition or "fast track" program. Rather, they are covered by U.S.S.G. § 5K3.1. U.S.S.G. § 5K2.0 cmt. n. 2(B). Section 5K3.1 provides that on motion of the government, the court may depart downward no more than four levels pursuant to the district's early disposition program.

According to the government, there is no fast-track program for defendants convicted of drug distribution offenses. Therefore, petitioner was not entitled to participate in the fast-track program because he was charged and pleaded guilty to a drug distribution offense. Accordingly, Mr. Garcia's failure to advise the court of an inapplicable program did not fall below an objective standard of reasonableness or unduly prejudice petitioner. This claim is also denied.

### 3. Failure to Advise Petitioner of His Constitutional Rights

Petitioner next asserts Mr. Garcia provided ineffective assistance of counsel because he failed to advise petitioner of his right to a jury trial and of the government's burden to prove the elements of the crime beyond a reasonable doubt. Pet. Mem. at 3. In response to petitioner's claim, Mr. Garcia simply states that he believes he "properly advised [petitioner] of his constitutional rights." Garcia Off. at 2. Even if Mr. Garcia failed to advise petitioner of the government's burden of proof, that error did not prejudice petitioner because petitioner was advised of his rights by this court. Plea Hr'g Tr. at 16-17. Inasmuch as petitioner was advised of

his right to trial and the government's burden of proof, petitioner was not prejudiced by Mr. Garcia's alleged failure. Therefore, this claim for relief is denied.

### 4. Failure to Advocate for a Shorter Sentence

Petitioner also seems to allege that his plea was involuntary because "the appointed Counsel of record [Mr. Garcia] promissed [sic] to ensure a downward departure, for cooperation on accepting the guilty plea, Instead of defendant going to trial." Pet. at 5. He claims Mr. Garcia was ineffective because he did not argue for an offense level of 24, instead of 32, which would have resulted in a low-end sentence of 51 months, instead of the 70 months petitioner received based on an offense level of 32.

Mr. Garcia's failure to advocate for an offense level of 24, based on departures for aberrant behavior, deportable alien status, or participation in a fast track program, was not unreasonable because those departures were unavailable to petitioner. Under these circumstances, the fact that petitioner did not receive a lesser sentence does not render his counsel's conduct unreasonable.

Even if the court were to find counsel's conduct was unreasonable, petitioner's claim fails because there is insufficient evidence to suggest he was prejudiced. To succeed on an ineffective assistance of counsel claim, a petitioner must allege facts sufficient to show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted upon going to trial." *Hill*, 474 U.S. at 59. Here, petitioner has made no such claim. In fact, petitioner does not assert his innocence, rather, he simply requests a re-calculation of his guidelines range. Although Mr. Garcia apparently did not request a specific offense level number, the record shows petitioner was repeatedly advised that the court was not bound by the

PAGE 12 - OPINION AND ORDER

recommendations of the parties or of the PSR writer, and of the possibility he could be sentenced anywhere within the guidelines range, and up to the statutory maximum if the court found it appropriate. Plea Agr. at ¶ 14; Sent. Hr'g Tr. at 11, 13, 15-16. Moreover, petitioner instructed Mr. Garcia not to request a specific sentence, but rather to ask for a sentence that was "just and proper." Garcia Aff. at 2-3. Mr. Garcia cannot be faulted for doing as his client requested. As such, petitioner is also not entitled to relief on this theory.

### B. Fifth Amendment Right Against Self-Incrimination

Petitioner claims his sentence violated the Constitution because he had a right to remain silent at sentencing but alleges no supporting facts. Pet. at 5. He also fails to address this claim in his memorandum. To the extent that petitioner waived his right to challenge his conviction on all grounds except ineffective assistance of counsel, newly discovered evidence, or a retroactive change in the applicable guidelines or statute, this claim is denied. Plea Agr. at ¶ 13.

### C. Evidentiary Hearing

Petitioner's motion does not require an evidentiary hearing because the facts petitioner asserts to support his claim fail to justify relief. A petitioner is entitled to a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. Nevertheless, in many cases no hearing is warranted. *Baumann v. United States*, 692 F.2d 565, 571 (9th Cir. 1982). An evidentiary hearing is not required if the allegations viewed against the record either fail to state a claim for relief or are "so palpably incredible or patently frivolous as to warrant summary dismissal." *Shah v. United States*, 878 F.2d 1156, 1158 (9th Cir. 1989) (internal quotation marks and citations omitted). A hearing is also not required when the petitioner's claims, although factually true, would not warrant relief.

PAGE 13 - OPINION AND ORDER

*Baumann*, 692 F.2d at 571. The district court can use its knowledge and recollection of the entire proceedings in deciding whether an evidentiary hearing is necessary. *Watts v. United States*, 841 F.2d 275, 277-78 (9th Cir. 1988). An evidentiary hearing on an ineffective assistance claim is required only if the factual allegations, if true, would satisfy both prongs of the *Strickland* test. *United States v. Laetividal-Gonzalez*, 939 F.2d 1455, 1465 (11th Cir. 1991). Here, petitioner's factual allegations, even if true, fail to satisfy either one or both prongs of the *Strickland* analysis. Accordingly, an evidentiary hearing is inappropriate in this case.

III. CONCLUSION

For the above mentioned reasons, petitioner's motion to correct his sentence (CV # 1/CR #50) pursuant to 28 U.S.C. § 2255 is DENIED, and his request for a hearing is DENIED.

IT IS SO ORDERED.

DATED this 4th day of December, 2006.

MICHAEL W. MOSMAN
United States District Court